# In the United States Court of Federal Claims

<table>
<tr><td>

NEWIMAR, S.A.,

      Plaintiff,

      v.

THE UNITED STATES,

      Defendant,

      and

J&J MAINTENANCE, INC.,

      Intervenor-Defendant

</td><td>

No. 21-cv-1897

Filed Under Seal: November 14, 2022

Publication: November 17, 2022[1]

</td></tr>
</table>

## MEMORANDUM AND ORDER

On May 12, 2022, this Court entered Judgment in favor of Defendants (ECF No. 61) in a bid protest action brought by Newimar, S.A. (Plaintiff or Newimar). Five months later, on October 12, 2022, Plaintiff filed a Motion for Stay of this Court's Judgment Pending Appeal (Motion or Motion to Stay). *See* ECF No. 67 (Mot.). Specifically, Plaintiff seeks a stay while the United States Court of Appeals for the Federal Circuit (Federal Circuit) considers Plaintiff's appeal, filed on June 22, 2022. Mot. at 30.[2] Plaintiff also urges this Court to enjoin Defendant United States (Defendant or the Government) and Intervenor-Defendant J&J Maintenance, Inc. (J&J) from

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case (ECF No. 12) and was publicly reissued after incorporating all redactions proposed by the parties. (ECF No. 73.) The sealed and public versions of this Memorandum and Order are otherwise identical, except for the publication date and this footnote.

[2] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

taking further steps to implement or begin performance under the protested contract award pending Plaintiff's Appeal.  *Id.*

Plaintiff's Motion to Stay lacks merit.  Accordingly, for the reasons described in this Memorandum and Order, Plaintiff's Motion is **DENIED**.

## BACKGROUND

The facts of this dispute are detailed in this Court's May 12, 2022 Memorandum and Order.  *See Newimar S.A. v. United States*, 160 Fed. Cl. 97 (2022) (Opinion); ECF No. 61 (Judgment).  For context, the Court briefly summarizes below the procedural history pertinent to the Motion.

The U.S. Department of the Navy (Navy) maintains the infrastructure for U.S. Naval Station (NAVSTA) Rota along the Bay of Cádiz in Rota, Spain, which includes "a 670-acre airfield, four active piers, hundreds of facilities, and approximately 373 family housing units."  *Newimar,* 160 Fed. Cl. at 107.  Plaintiff, the incumbent civilian contractor at NAVSTA Rota for the last 25 years, filed this post-award bid protest on September 23, 2021 to challenge the Navy's contract award to J&J for future base operations support (BOS) services at NAVSTA Rota.  *Id.* at 107.  On May 12, 2022, after consideration of the parties' briefs and after a lengthy and thorough oral argument, this Court upheld the Navy's award to J&J, denying Plaintiff's Motion for Judgment on the Administrative Record (MJAR), and granting the Government's and J&J's Cross-MJARs.  *Id.* at 142.  On June 22, 2022, Plaintiff filed a Notice of Appeal.  ECF No. 64.  On September 15, 2022, Plaintiff subsequently filed its opening appellate brief in the Federal Circuit; Plaintiff, however, did not move the Federal Circuit for an expedited briefing schedule pursuant to Federal Circuit Rule 27(c).  *Newimar S.A. v. United States*, No. 22-1949, D.I. 16 (Fed. Cir. Sept. 15, 2022); *see also* Mot. at 7 (stating Plaintiff is not "formally requesting expedited relief" before the Federal Circuit).

Since 2021, Plaintiff has continued to service NAVSTA Rota under a series of bridge contracts with the Navy. *See* Declaration of Erin R. Quimby, United States Contracting Officer (ECF No. 69-1) (Def.'s Aff.), ¶ 3.   Plaintiff's current bridge contract is set to terminate on December 31, 2022. *Id.*; Mot. at 8.  The Navy declined to further renew Plaintiff's bridge contract, and instead intends to proceed with its transition of the awarded contract to J&J, consistent with this Court's ruling. Def.'s Aff., ¶ 3; Mot. at 8–9.  The contract award incorporates a 45-day phase-in period for J&J, which the Navy intends to commence on November 16, 2022.  *Id.*; *see* Defendant's Response to Plaintiff's Motion for a Stay Pending Appeal (ECF No. 69) (Def.'s Resp.) at 3.  Plaintiff filed the present Motion to Stay only after it had received notice on September 30, 2022 of the Navy's intention to transition the work to J&J and forgo renewal of another bridge contract with Plaintiff.  Def.'s Aff., ¶ 3; *see* ECF No. 71-3 (Navy letter to Plaintiff, dated September 30, 2022).

## APPLICABLE LEGAL STANDARDS

Plaintiff's Motion seeks both a stay of this Court's Judgment and entry of an injunction pending resolution of its appeal by the Federal Circuit. Mot. at 30.  Rule 62(d) of the Rules of the United States Court of Federal Claims (Rule(s)) states that "[w]hile an appeal is pending from an interlocutory order or final judgment . . . the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Rule 62(d). The imposition of such relief pending appeal is an exercise of judicial discretion that depends upon the circumstances of the particular action.  *See ePlus, Inc. v. Lawson Software, Inc.*, 431 F. App'x 920, 920 (Fed. Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 433 (2009)) (noting that the decision to stay a permanent injunction pending appeal "is not a matter of right [b]ut instead an exercise of judicial discretion").

3

The relief Plaintiff seeks here "is an 'extraordinary and drastic remedy,' which is not granted lightly." *ACI Techs., Inc. v. United States*, 162 Fed. Cl. 49, 43 (2022) (quoting *G4S Secure Integration LLC v. United States*, 159 Fed. Cl. 249, 254–55 (2022)); *see RLB Contracting, Inc. v. United States*, 120 Fed. Cl. 681, 682 (2015) ("An injunction pending appeal is an extraordinary remedy and will not be lightly granted.") (citing *Acrow Corp. of Am. v. United States*, 97 Fed. Cl. 182, 183 (2011)). As the movant, Plaintiff "bears the burden of showing the circumstances justify an exercise of the court's discretion . . . ." *Beard v. United States*, 451 F. App'x 920, 921 (Fed. Cir. 2011); *see also ACI Techs.*, 162 Fed. Cl. at 43 (quoting *Telos Corp. v. United States*, 129 Fed. Cl. 573, 575 (2016)) (noting that "the party moving for a stay 'carries the burden of establishing the propriety of an injunction pending appeal . . . .'").

While trial courts have discretion to issue stays or other injunctive relief pending appeal, courts should consider:

> (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other interested parties; and (4) where the public interest lies.[3]

*ACI Techs.*, 162 Fed. Cl. at 43 (quoting *Telos Corp.*, 129 Fed. Cl. at 575). Courts acknowledge that the first two factors are generally of primary importance to a court's inquiry. *See Acrow Corp. of Am.*, 424 F. App'x at 948 (noting the first two factors are "the most critical"); *see also Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (noting courts need not afford the factors equal weight). Courts, however, "adopt a flexible approach to balancing the four factors," as they "do not form a rigid set of rules for determining whether a stay is appropriate." *JWK Int'l Corp. v. United States*, 49 Fed. Cl. 364, 366 (2001); *see also ACI Techs.,*

---

[3] Concerns over factor 3 (harm to other interested parties) and factor 4 (the public interest) "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

4

162 Fed. Cl. at 43 (quoting *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987)) (noting that the court must "assess[] [a] movant's chances for success on appeal and weigh[] the equities as they affect the parties and the public") (internal quotations omitted).

In lieu of demonstrating a strong likelihood of success on the merits under factor 1, the movant may instead demonstrate a "substantial case" of success on the merits "*provided* the other factors militate in movant's favor." *Standard Havens Prods.*, 897 F.2d at 513 (citing *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)) (emphasis in original); *see also ACI Techs.*, 162 Fed. Cl. at 43. Thus, a court may still order a stay pending appeal if the moving party demonstrates a "substantial case" on the merits, and all other factors weigh "decidedly toward the moving party." *ACI Techs.*, 162 Fed. Cl. at 44 (quoting *G4S Secure Integration*, 159 Fed. Cl. at 255); *see also JWK Int'l Corp.*, 49 Fed. Cl. at 366 ("The stronger the showing of likelihood of success on the merits, the less heavily the balance of harms need tip in [the movant's] favor. Conversely, if the harm factors weigh heavily in [the movant's] favor, [the movant] only needs to demonstrate a substantial case on the merits.").

Although the "substantial case" standard permits movants to demonstrate a lesser showing of success on the merits in particular circumstances, it "is no free ride." *ACI Techs.*, 162 Fed. Cl. at 44. A "substantial case" on the merits requires more than a "fair" or "better than negligible chance" of success. *Standard Havens Prods.*, 897 F.2d at 515. The movant must demonstrate that the question raised "is novel or close" or that the movant has highlighted questions on the merits "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *ACI Techs.*, 162 Fed. Cl. at 44 (internal citations omitted). Indeed, a mere allegation that the Government or a court erred does not alone satisfy the "substantial case" standard. *Id.* at 47. "A

party seeking a stay must do more than simply claim the trial court got it wrong; it must present a good faith argument that substantial doubt exists over the trial court's decision." *Obsidian Sols. Grp., LLC v. United States*, No. 20-1602C, 2021 WL 1688892, at *4 (Fed. Cl. Apr. 27, 2021)

## DISCUSSION

This Court must deny Plaintiff's Motion to Stay.  As an initial matter, Plaintiff's delay in filing its Motion and its decision to forgo expedited briefing before the Federal Circuit provides sufficient justification to deny Plaintiff's Motion.  Even considering the merits, however, Plaintiff's Motion to Stay must be denied, as Plaintiff fails to demonstrate a strong or substantial case on the merits that would warrant the entry of a stay or injunctive relief pending resolution of Plaintiff's appeal before the Federal Circuit.

**I.      Plaintiff's Delayed Motion to Stay and Decision to Proceed Before the Federal Circuit on a Non-Expedited Basis**

After close review of both the record and the timing of Plaintiff's filings, it is evident to this Court that Plaintiff's Motion represents a last-minute effort by Plaintiff to recover from gamesmanship gone awry.  It appears that Plaintiff made the strategic decision to delay filing a motion to stay this Court's Judgment apparently in the hope, or with the expectation, that the Navy would further extend Plaintiff's bridge contract for the duration of the appeal.  *See* Def.'s Aff., ¶ 3 ("Soon after receiving notice of the Navy's intent to proceed with transition [to J&J], Newimar filed with this Court a Motion to Stay Performance pending the appeal before the Federal Circuit.").  In doing so, Plaintiff chose to disregard the reasonably foreseeable financial and business risks frequently incurred when an incumbent loses a bid to renew a significant contract. *See, e.g.*, *Telos Corp.*, 129 Fed. Cl. at 578 (recognizing lost profits and adverse consequences to employees as "the unavoidable results of [a] contract coming to an end").  On September 30, 2022, Plaintiff learned from the Navy that its gamble had failed, and the latest bridge contract would not

6

be extended past December 31, 2022.  *See* Def.'s Aff., ¶ 3; Mot. at 8.  Yet, this outcome was foreseeable.  Indeed, Plaintiff could have predicted this outcome as early as May 12, 2022, when this Court issued its Opinion and entered Judgment in favor of Defendants.  *See Newimar*, 160 Fed. Cl. at 107–08.  It was reasonably foreseeable from a business, strategic, and economic perspective that the Navy might opt not to renew Plaintiff's bridge contract after this Court had upheld the propriety of the award to J&J.  *See Id.*  Plaintiff should have anticipated this risk and, by engaging in prompt motion practice, potentially could have mitigated the financial consequences of losing its incumbency.

Plaintiff, however, failed to take these precautionary measures.  Instead, Plaintiff waited for five months, until approximately two months before the bridge contract's termination date, to file this Motion.  *See* Mot. at 8–9.  Plaintiff belatedly alleges that the financial strains it could and should have foreseen months ago *now* constitute irreparable harm warranting a stay of this Court's Judgment and injunctive relief.  *See id.* at 27–28.  Plaintiff cannot have it both ways, and this Court will not so reward Plaintiff based on such a record.  *See, e.g.*, *CRAssociates*, 103 Fed. Cl. at 27 (noting that "self-inflicted harm . . . [is] not the sort of consideration that ought to give rise to a stay").  In reviewing the record, this Court identifies two primary timing issues which, taken together, compel this Court to deny Plaintiff's Motion.

First, the timing of Plaintiff's Motion counsels strongly against entering injunctive relief. The timing of a party's motion to stay pending appeal is a consideration in deciding whether entry of a stay or injunctive relief pending appeal is warranted.  *See, e.g.*, *HVF West, LLC v. United States*, 148 Fed. Cl. 45, 57 (2020) (noting movant's seven-week delay in filing motion to stay pending appeal contributed to decision to deny the motion); *Lawson Env't Servs., LLC v. United States*, 128 Fed. Cl. 14, 19 (2016) (holding movant's two-month delay in filing motion to stay

pending appeal undermined its claim of irreparable harm). Plaintiff filed the present Motion to Stay on October 12, 2022, precisely five months after the Court had issued its Memorandum and Order and entered Judgment in favor of the Government and J&J. *See* ECF No. 67; *Newimar*, 160 Fed. Cl. at 108. Plaintiff's five-month delay in filing its Motion to Stay far exceeds the seven-week and two-month intervals considered untimely in *HVF West* and *Lawson Environmental Services*, respectively.[4] *HVF West*, 148 Fed. Cl. at 57; *Lawson Env't Servs.*, 128 Fed. Cl. at 19. Had Plaintiff harbored sincere concerns over the allegedly catastrophic financial consequences that it could incur resulting from Judgment issued in favor of Defendants, it should have acted swiftly to file a Motion to Stay at that time. That Plaintiff did not file earlier — and waited for such a prolonged period to do so — suggests its choice to delay was strategic. It is evident that Plaintiff intended to prolong its ability to service NAVSTA Rota and only seeks injunctive relief now because the Navy recently informed Plaintiff that it would not further extend Plaintiff's latest bridge contract.

Second, Plaintiff's portrayal of imminent and irreparable harm absent a stay is further belied by its failure to pursue an expedited appeal before the Federal Circuit. Federal Circuit Rule 27(c) permits a party to move for accelerated consideration of its appeal by filing a Motion to Expedite. Fed. Cir. Rule 27(c). The Practice Notes to Federal Circuit Rule 27 indicate that such a motion "should be filed *immediately* after docketing . . . [and] is appropriate where the normal briefing and disposition schedule may adversely affect one of the parties, as in appeals involving preliminary or permanent injunctions or *government contract bid protests*." Fed. Cir. R. 27 Practice Notes (emphasis added). These Practice Notes reflect that a party in Plaintiff's position (*i.e.*, a party to a government contract bid protest allegedly harmed by delays inherent in the

---

[4] While not binding, these decisions are instructive.

resolution of an appeal) may benefit from expedited briefing.  *Id.*  Yet, Plaintiff never filed a motion to expedite its appeal in the Federal Circuit, and apparently does not plan to do so.  Mot. at 7 (acknowledging Newimar is not "formally requesting expedited relief" before the Federal Circuit).  Plaintiff's failure to do so further underscores the failed strategic choice that accompanies Plaintiff's seemingly sudden allegations of irreparable harm.

Such timing issues, alone, provide ample justification to deny Plaintiff's Motion. Nevertheless, for purposes of completeness, this Court also considers Plaintiff's merits-related arguments raised by its Motion, all of which fail to warrant entry of a stay or injunctive relief pending appeal.

## II.     Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits

Even assuming *arguendo* that Plaintiff's tardiness does not necessitate denial of the Motion to Stay, this Court must still deny Plaintiff's Motion because it fails to raise any issue or question so novel or close as to warrant the extraordinary remedy of injunctive relief pending appeal. Plaintiff insists it has presented, if not a strong case, at least a substantial case on the merits because its Motion and appeal allegedly present issues of first impression.  *See* Plaintiff's Reply to Defendant's and Intervenor-Defendant's Oppositions to Motion to Stay (ECF No. 71) (Pl.'s Reply) at 3.  Yet, Plaintiff fails to articulate which of its arguments represents an issue of first impression, and this Court is aware of none.  Indeed, Plaintiff's Motion merely reiterates the identical concerns and arguments that Plaintiff raised in its MJAR, all of which this Court previously addressed and rejected.  *See generally Newimar*, 160 Fed. Cl. at 97.  Plaintiff cannot demonstrate a strong or substantial case on the merits via either reiteration of its previously-asserted MJAR arguments or via general disagreement with this Court's reasoning.  *See Lawson Env't Servs.*, 128 Fed. Cl. at 17 (acknowledging that when a movant "seeks to 'relitigate several issues that the opinion addressed

fully and resolved,'" the Court will deny an injunction) (internal citations omitted); *Obsidian Sols. Grp.*, 2021 WL 1688892, at *4 ("A party seeking a stay must do more than simply claim the trial court got it wrong; it must present a good faith argument that substantial doubt exists over the trial court's decision.").

Plaintiff alleges this case is a close call and offers four arguments in support of its alleged strong or substantial case on the merits. This Court has closely reviewed the arguments presented by Plaintiff's Motion and has additionally reviewed its Memorandum and Order in whole. After such review, this Court holds Plaintiff fails to demonstrate a strong or substantial case on the merits, and accordingly that its Motion to Stay must be denied.

### A. J&J's Registration Status with the Spanish *Registro Mercantil* and Spanish "W" Tax Number

Plaintiff argues that the Government, and this Court, erred in deeming J&J a responsible contractor because J&J allegedly failed to (1) register with the Spanish *Registro Mercantil* or (2) obtain a proper Spanish "W" tax number during the procurement process. Mot. at 10–19. Plaintiff asserted the identical arguments, however, in its MJAR, and this Court addressed and ultimately rejected such arguments. *See Newimar*, 160 Fed. Cl. at 124–28. Plaintiff's arguments on the *Registro Mercantil* and the Spanish "W" tax number were rejected on two unique bases. *Id.* First, Plaintiff waived these arguments by asserting them for the first time in its reply brief. *See id.* at 124. Second, this Court held that even if such contentions were not waived, Plaintiff's arguments would still be unavailing on the merits. *Id.* at 124 n.13 (citing *Qwest Gov't Servs., Inc. v. United States*, 112 Fed. Cl. 24, 36–37 (2013)). Assuming *arguendo* that such arguments were not waived, the Court ultimately concluded compliance with the Spanish *Registro Mercantil* registration requirements and the Spanish "W" tax number constituted "contract administration matter[s] beyond this Court's bid protest jurisdiction." *Id.* at 125.

### 1. Waiver

As noted, this Court held that Plaintiff waived its arguments on J&J's *Registro Mercantil* registration status and the Spanish "W" tax number by failing to raise these arguments until its reply brief. *Id.* at 124. Plaintiff marginally addresses the waiver issue in its briefing for the present Motion to Stay,[5] vaguely pointing to arguments made in Plaintiff's appellate brief to conclude that "there is a substantial likelihood that the Federal Circuit overrules the Court's holdings on waiver as well as Newimar's substantive arguments." Pl.'s Reply at 4. Yet, Plaintiff's argument is conclusory and does not explain how its waiver arguments support a strong or substantial case on the merits here or why the Federal Circuit would likely overrule this Court's prior waiver determination. *See id.* Further, Plaintiff does not distinguish clear Federal Circuit precedent holding issues initially raised on reply before a trial court are waived. *See Stauffer v. Brooks Bros. Grp., Inc.*, 758 F.3d 1314, 1322 (Fed. Cir. 2014) (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295–96 (Fed. Cir. 2009)) (appellant waived arguments initially raised in reply brief before the district court); *Novosteel S.A. v. U.S., Bethlehem Steel Corp.,* 284 F.3d 1261, 1273–74 (Fed. Cir. 2002) (holding that appellant waived argument raised for the first time in a reply brief before trial court). This Court properly considered the Federal Circuit's *Novosteel* decision in its May 12, 2022 Memorandum and Order and accordingly deemed Plaintiff's arguments procedurally waived. *Newimar*, 160 Fed. Cl. at 124.

### 2. Merits

As noted, even if Plaintiff had not waived its arguments concerning Spanish registration requirements, Plaintiff's arguments would still fail on the merits. Plaintiff contends this Court

---

[5] Plaintiff only addressed the Court's waiver holding in its reply in support of its Motion to Stay, not in its initial Motion. *See* Pl.'s Reply at 4.

failed to adequately consider emails between the Navy and J&J which discuss Spanish registration requirements. *See* Mot. at 15–16. In its Memorandum and Order, however, this Court considered the full Administrative Record and the express terms of the Revised Solicitation and Amendment 0008, which were clear and unambiguous. *Newimar*, 160 Fed. Cl. at 119–20, 125–27. This Court accordingly held that the deadline for submission of requisite permits and licenses by the awardee was "[p]rior to the start of performance," consistent with the Revised Solicitation and applicable law. *Id.* at 125–27 (internal quotations omitted). Far from suggesting an inadequate perusal of the Administrative Record, the Court's May 12, 2022 Memorandum and Order explains in detail that the Government properly excluded consideration of these Spanish registration requirements from its responsibility assessment; simply put, the clear terms of the Revised Solicitation and Amendment 0008 did not require bidders to prove satisfaction of the registration requirement at the time of bid-submission. *See id.* at 125 (quoting *Advanced Am. Constr., Inc. v. United States*, 111 Fed. Cl. 205, 223 (2013)) ("Requirements that 'are not required to be satisfied by the contractor until after the contract is awarded' are therefore not considered responsibility requirements.").

Additionally, Plaintiff also reiterates concerns over the alleged significance of the Navy's consideration of guidance from the U.S. Section of the Permanent Committee on the necessity of meeting Spanish registration requirements under the Agreement on Defense Cooperation (ADC). Mot. at 14–15. As explained in this Court's Opinion, after the Spanish Section of the Permanent Committee objected that J&J had not yet registered with the *Registro Mercantil*, the U.S. Section of the Permanent Committee clarified that registration with the *Registro Mercantil* was not a prerequisite to *awarding* a contract under a solicitation. *Newimar*, 160 Fed. Cl. at 119 (citing AR 14789–91) (emphasis added). Instead, any awardee under the solicitation would need to have such

a license prior to the start of *performance*. *Id.* (emphasis added). The Navy appropriately relied on this clarification, and this Court remains unpersuaded by Plaintiff's Motion to Stay that its holding is incorrect. *Id.*

Finally, Plaintiff contends that this Court ignored important parts of the Administrative Record and incorrectly "conclude[ed] that the Navy could substitute the U.S. Section's analysis under the limited vetting process for its own duty to affirmatively determine compliance" with all Responsibility criteria. Mot. at 19. As explained in this Court's Opinion, this Court lacks jurisdiction to address any alleged non-compliance with the ADC or the specific "allegation that the Spanish Section [of the Permanent Committee] did not approve J&J as an offeror" due to J&J's registration status at that time. *Id.* at 127–28. Those arguments "depend on interpretation of a specific provision of [the ADC] rather than anything in the Revised Solicitation." *Id.* Because these arguments "derive[] [their] existence so exclusively and substantially" from the ADC, an "executive agreement that operates 'in the framework of the North Atlantic Treaty,'" this Court lacks jurisdiction to consider these arguments at all. *Id.* (quoting the ADC, ch. 1, art. I, ¶ 1). This Court, therefore, exercised judicial restraint in declining to address Plaintiff's arguments pertaining to the ADC. Again, the Court is unpersuaded by Plaintiff's Motion.

This Court reviewed its holding and analysis anew in considering Plaintiff's Motion. The Opinion includes a thorough analysis of the Administrative Record and reflects that the Court correctly rejected, on two separate bases, Plaintiff's merits argument that J&J was not qualified to be the awardee due to an alleged failure to meet the Spanish registration requirements. In sum, Plaintiff's Motion to Stay rehashes unpersuasive arguments concerning Spanish registration requirements and does not demonstrate a strong or substantial case on the merits that would warrant the requested relief.

### B. Undisclosed Evaluation Criterion

Plaintiff disagrees with the Court's holding that the Navy did not evaluate offers using an undisclosed criterion, specifically a criterion concerning the number of previously performed projects. *See* Mot. at 20–22. Again, Plaintiff's Motion expresses discontent with the Court's ruling but ultimately offers no new or compelling facts or law that could amount to a strong or substantial case on the merits. For example, the Revised Solicitation allowed the Navy to evaluate the "depth and breadth" of offerors' relevant experience. *Newimar*, 160 Fed. Cl. at 129. Plaintiff contends in its Motion that the Court erred in interpreting the term "breadth" to connote numerosity, thereby finding the Navy properly considered the number of offerors' past projects. Mot. at 20–21; *see Newimar*, 160 Fed. Cl. at 129. Yet, Plaintiff cannot present a strong or substantial case on the merits simply by expressing disagreement with this Court's reasoning below; it must instead explain why the Federal Circuit would also likely disagree with this Court's holding. *See Obsidian Sols. Grp.*, 2021 WL 1688892, at *4. It has not done so. Further, as this Court noted, "[a]gencies have 'great discretion in determining the scope of an evaluation factor.'" *Newimar*, 160 Fed. Cl. at 128 (quoting *Maint. Eng'rs v. United States*, 50 Fed. Cl. 399, 415 (2001)). For Plaintiff to succeed on the merits related to this issue, it must demonstrate, *inter alia*, that the agency used a "significantly different basis in evaluating the proposals than was disclosed." *Id.* (quoting *Harmonia Holdings Grp., LLC v. United States*, 153 Fed. Cl. 245, 255 (2021)). Beyond making a few conclusory statements to this point, Plaintiff's Motion fails to meet this burden.

This Court also rejected Plaintiff's argument that the Navy's contract award involved undisclosed evaluation criterion because, even if true, Plaintiff suffered no prejudice. *Id.* at 131-32. It is well-established that to succeed in a bid protest, a plaintiff must demonstrate that it suffered prejudice; namely that there was a "substantial chance it would have received the contract award but for [the Government's] error." *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377,

380 (2003) (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed Cir. 1999)) (internal quotations omitted); *see also Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996) (alteration in original) (emphasis in original) (internal quotations omitted) (quoting *C.A.C.I., Inc.-Fed. v. United States*, 719 F.2d 1567, 1574–75 (Fed. Cir. 1983)) ("To establish competitive prejudice, a protester must demonstrate that but for the alleged error, there was a *substantial chance* that [it] would receive an award—that it was within the zone of active consideration."). Plaintiff's Motion briefly discusses its concerns with this Court's lack of prejudice holding but does not clarify why the holding was incorrect. Mot. at 22. Plaintiff merely makes the conclusory statement that because the procurement involved "only two bidders that were weighted equally on all the listed factors, the use of the undisclosed factor was clearly instrumental in J&J receiving the contract award . . . ." Mot. at 22. Plaintiff's position, however, ignores the Administrative Record, which indicates that while the contractors received the same adjectival ratings across all four evaluation factors, the Government identified several significant advantages in J&J's proposal that justified the award. *Newimar*, 160 Fed. Cl. at 131–32. In addition, J&J's proposal offered a lower price, and the Revised Solicitation dictated "[t]he importance of price [would] increase if the Offerors' non-price proposals [were] considered essentially equal in terms of overall quality." *Id.* at 132 (citing Tab 50 at AR 10723, 10730–31). Thus, for the reasons explained in the Court's Opinion, Plaintiff would have lost the award, regardless of whether the Government had considered the alleged unstated evaluation criterion. *Id.*

Accordingly, even if the Federal Circuit were to agree with Plaintiff that the Government had applied an unstated evaluation criterion, for the reasons stated above and in this Court's Memorandum and Order, Plaintiff nevertheless would be unsuccessful on the merits of its undisclosed criterion argument because it has failed as a matter of law to sufficiently demonstrate

prejudice stemming from the use of the criterion. Plaintiff's argument concerning an unstated evaluation criterion, therefore, does not raise a strong or substantial case on the merits.

### C. Unbalanced Pricing Analysis and Consideration of ELINs

Plaintiff argues that the Court erred in deeming the Navy's unbalanced pricing analysis reasonable. Mot. at 22–27. Plaintiff's Motion, once again, simply rehashes arguments this Court has already rejected. *See Newimar*, 160 Fed. Cl. at 139–41. A movant does not present a strong or substantial case on the merits when it "simply reiterates its objections to the [Government's] decision and the Court's denial of judgment on the administrative record in Plaintiff's favor." *ACI Techs.*, 162 Fed. Cl. at 47. This is particularly true where, as here, the bid protest was a "routine" challenge to the agency's evaluation and the issues "before the Court were neither 'novel [n]or close.'" *See id.* (quoting *Acrow Corp.*, 97 Fed. Cl. at 184).

This Court engaged in a thorough review of the Government's unbalanced pricing analysis. *Newimar*, 160 Fed. Cl. at 139–41. In reviewing the Navy's methodology, this Court appropriately noted its role was "not to test whether there is a better, faster, or otherwise more correct way to analyze unbalanced pricing; rather it [was] the Court's task to determine whether the Navy's unbalanced pricing analysis is reasonable and its conclusions rational." *Id.* at 139 (quoting *IAP World Servs., Inc. v. United States*, 153 Fed. Cl. 564, 567 (2021)). Acknowledging that an agency's methodology is "a matter within the sound exercise of the agency's discretion," *id.* at 141 (quoting *Logistics Health, Inc. v. United States*, 154 Fed. Cl. 51, 85 (2021)), the Court limited its inquiry to "whether there is any statutory or regulatory provision that precludes [the adopted methodology]." *Id.* at 139–140 (quoting *Tyler Constr. Grp. v. United States*, 570 F.3d 1329, 1333

(Fed. Cir. 2009)).[6]  Ultimately, Plaintiff failed to identify a single law or regulation prohibiting the pricing analysis technique the Navy adopted and has still yet to do so.[7]  *Id.* at 140.  The Court also specifically addressed and rejected Plaintiff's assertion that the terms of the Revised Solicitation, the FAR, and relevant case law mandated an unbalanced pricing analysis at the exhibit line item number (ELIN) level.  *Id.*  This Court interpreted the definition of "line item" as employed in FAR § 2.101 and the Revised Solicitation, confirmed ELINs did not meet the stated definition, and held accordingly that the Navy's unbalanced pricing analysis was reasonable and not contrary to law. *Id.*  Plaintiff's objections to the Court's holding, therefore, amount to nothing more than a difference of opinion on statutory interpretation and do not raise a strong or substantial case on the merits.  *See* Mot. at 24–25.

---

[6] Plaintiff argues that this Court misapplied *Tyler Construction Group v. United States*, stating the standard articulated in the case is limited to a "far more specific determination restricted to IDIQ contracts for construction procurement."  Mot. at 22–23 (citing 570 F.3d 1329, 1333 (Fed. Cir. 2009)).  Plaintiff raised this argument previously in its MJAR to no avail, and it proves equally unsuccessful here.  Indeed, the U.S. Court of Federal Claims has previously applied the *Tyler Construction* standard to evaluate an agency's unbalancing analysis.  *See, e.g., IAP*, 153 Fed. Cl. at 569.  Similarly, this Court did not err in applying the same standard to consider the Government's unbalancing analysis in this bid protest.  Plaintiff's Motion does not raise a strong or substantial case on this basis that would merit a stay or injunctive relief.

[7] Plaintiff points to *Academy Facilities Management v. United States* to argue that the Navy has previously considered ELINs to constitute "line items" for the purpose of unbalanced pricing analyses.  *See* Mot. at 26 (citing 87 Fed. Cl. 144, 543–54 (2009)).  As an initial matter, "this Court is not bound by the decisions of other judges on the Court of Federal Claims." *Almanza v. United States*, 136 Fed. Cl. 290, 296 (2018).  Further, presenting a single case demonstrating that an unbalanced pricing analysis *may* occur at the ELIN level does not establish that *every* unbalanced pricing analysis must occur at the ELIN level.  Indeed, and as this Court noted, other U.S. Court of Federal Claims decisions have approved the use of unbalanced pricing methodologies examining CLIN-level pricing.  *See Newmar*, 160 Fed. Cl. at 140 (citing *IAP World Servs.*, 153 Fed. Cl. at 567–72) (endorsing the Navy's assessment of unbalanced pricing at the CLIN level, rather than the ELIN level, in a fixed-price procurement).  The Navy had discretion to choose how to perform its unbalanced pricing analysis for *this* procurement, including the choice to analyze at the CLIN level, so long as the chosen methodology was reasonable.  *See Logistics Health*, 154 Fed. Cl. at 83–86.  Plaintiff's reliance on *Academy Facilities Management* is uncompelling.

### D.  Plaintiff's Successful Prior Protest of the Original Solicitation

Perhaps most unconvincingly, Plaintiff suggests its previous, successful protest of the Original Solicitation "weighs in favor of the likelihood of Newimar's success on the merits."  Mot. at 27.  Plaintiff's prior protest of a solicitation that was later amended has no bearing on Plaintiff's likelihood of success on the merits in this appeal.  Indeed, Plaintiff's initial protest of the Original Solicitation was based on distinct grounds than those considered in this Court's May 12, 2022 Memorandum and Order concerning the Revised Solicitation.  Plaintiff's Motion does not provide this Court with any reason to grant the requested relief on this basis.

### III.   Plaintiff's Alleged Irreparable Harm in the Absence of Injunctive Relief Does Not Outweigh Harms to the Government and J&J

As Plaintiff failed to present a strong or substantial case on the merits, Plaintiff's Motion could be denied absent consideration of the relative harms to the parties.  *See HVF West*, 148 Fed. Cl. at 57 (noting that "the first factor—likelihood of success or, at a minimum, substantial case— is essential," so harm to the movant is irrelevant if the movant fails to demonstrate a case on the merits).  Nevertheless, even if Plaintiff could demonstrate a strong or substantial case on the merits, the balance of hardships between Plaintiff, the Government, and J&J still points decidedly against granting Plaintiff's Motion.

### A.  Plaintiff's Harm

A movant's "burden of showing irreparable harm in this context is steep." *Obsidian Sols. Grp.*, 2021 WL 1688892, at \*4.  Any injury alleged must be "both certain and great," and the movant must convey that the hardship will have an "immediate and substantial impact."  *ACI Techs.*, 162 Fed. Cl. at 48 (internal quotations and citations omitted).  "No federal contractor has a right to maintain its incumbency in perpetuity," and the loss of an incumbent contract does not, on its own, constitute irreparable harm.  *CRAssociates*, 103 Fed. Cl. at 26; *see also G4S Secure*

*Integration*, 159 Fed. Cl. at 262 (same proposition).  The movant, therefore, must allege harms beyond those "any incumbent would experience upon the loss of a successor contract," as losing a contract, even an important contract, is a risk that every incumbent contractor faces. *CRAssociates*, 103 Fed. Cl. at 26; *see NetCentrics Corp. v. United States*, 145 Fed. Cl. 371, 377 (2019) (quoting *Navient Sols., LLC v. United States*, 141 Fed. Cl. 181, 185 (2018)) ("NetCentrics's 'financial strain,' like that of any incumbent contractor that is unsuccessful in a new competition, 'is the unavoidable result of its [contract] coming to an end.'").

Courts consider economic loss as evidence of irreparable harm if it "threatens the survival of a movant's business."  *Obsidian Sols. Grp.*, 2021 WL 1688892, at *4 (quoting *Sierra Mil. Health Servs., Inc. v. United States*, 58 Fed. Cl. 573, 582 (2003)).  Yet, the movant must provide facts or evidence to support its assertions of harm and cannot rely only "on attorney argument to establish irreparable injury."  *Id.* (quoting *Chromalloy San Diego Corp. v. United States*, 145 Fed. Cl. 708, 744 (2019)).

Plaintiff's allegations of irreparable harm stem predominately from its dependence on the NAVSTA Rota contract as its main source of revenue.  Plaintiff alleges it derives 90 percent of its revenue from the services it provides at NAVSTA Rota, and that 122 of Plaintiff's 172 employees work exclusively under the bridge contract set to expire on December 31, 2022.  Mot. at 27. Plaintiff argues it will face "catastrophic" harm and "may cease to exist" if "forced to halt work after the bridge contract without a decision on appeal."  *Id.* at 27–28.  According to Plaintiff, it could not "financially absorb the costs associated with halting work" or recover any revenue lost between the bridge contract expiration date and the Federal Circuit's decision.  *Id.*  These risks, Plaintiff argues, constitute irreparable harm worthy of injunctive relief pending appeal.

Plaintiff's arguments are unavailing.  Plaintiff fails to provide any meaningful evidence to support its contention that it would cease to exist without a stay pending appeal, and, in fact, evidence supports the contrary.[8]  Instead, Plaintiff offers conclusory statements and bald assertions by its counsel, without further elucidating how the alleged harms are immediate or certain.  *See Obsidian Sols. Grp.,* 2021 WL 1688892, at *4.  Further, Plaintiff acknowledges that in addition to the services it provided under the BOS Contract, it previously engaged in several construction

---

[8] Plaintiff's Motion mischaracterizes the holding in *Swift & Staley Inc. v. United States*.  159 Fed. Cl. 731 (2022).  There, the court noted that a movant demonstrated irreparable harm where the protested contract made up a "significant percentage of [movant's] revenue," and the movant would lose its ability to compete without a stay.  *Id.* at 735–36.  Far from declaring that "the loss of a government contract constitutes irreparable harm . . . particularly when an incumbent contractor depends on the contract for its survival," as Plaintiff suggests, the court in *Swift & Staley* reinforced the notion that the balance of harm must tilt decidedly in the movant's favor to warrant injunctive relief.  Mot. at 28; *Swift & Staley*, 159 Fed. Cl. at 735–36.  That is not the case here, where Plaintiff has provided conclusory and unsupported statements concerning alleged harm.  Plaintiff supports its claim of harm with an affidavit — referenced again only in Plaintiff's Reply in support of the Motion to Stay — from its President.  *See* Pl.'s Aff.  This affidavit, however, is almost a year old and does not discuss Plaintiff's current allegation of harm.  *Id.* at 3 (affidavit executed November 23, 2021).  Nor could it.  Indeed, the affidavit does not account for intervening events that may minimize Plaintiff's claimed harm, including the award of a $5 million DOD contract, which, Plaintiff acknowledges, "was not in effect at the time" it initially lodged its protest.  Pl.'s Reply at 5.  The affidavit's weight has thus been substantially diluted by the passage of time.  In contrast, the Government and J&J have provided recent declarations specifically documenting the robust harms they will experience should this Court grant a stay pending appeal.

Plaintiff's treatment of *PDS Consultants, Inc. v. United States* is similarly misleading, as Plaintiff ignores significant differences between the facts in *PDS Consultants* and the circumstances of this case.  133 Fed. Cl. 810 (2017).  All parties and the court in *PDS Consultants* agreed that the movant's appeal presented a question of first impression and constituted a substantial case on the merits.  *Id.* at 817.  As discussed above, the same cannot be said for Plaintiff's Motion, which fails to allege a likelihood of success on appeal and is vigorously contested.  Additionally, only the movant in PDS Consultants alleged any concrete harm that would occur absent a stay pending appeal: the government chose not to enumerate any harms that would occur under a stay, and the court considered the opposing party's alleged harms highly speculative.  *Id.* at 818.  The court's decision, therefore, did not depend on the percentage of movant's revenue associated with the contract under protest; instead, the court determined that the evidence before it concerning balance of harms favored the movant.  *Id.*  Like the court in *PDS Consultants*, this Court has analyzed the evidence – as opposed to attorney argument – presented by Plaintiff's Motion concerning balance of harms and finds in favor of the Government and J&J.

projects with the Navy at NAVSTA Rota.  Declaration of Antonio Marcos Rodriguez, Newimar President (ECF No. 71-1) (Pl.'s Aff.), ¶¶ 5–9.  Yet, Plaintiff fails to explain why, should it lose the BOS contract, Plaintiff could not pursue other similar construction projects in the future.  Indeed, the calamitous tone of Plaintiff's arguments on harm is further belied by the fact that the U.S. Department of Defense awarded Plaintiff a five-and-a-half-year custodial services contract worth over $5 million on June 14, 2022.  *See* Defendant-Intervenor's Opposition to Plaintiff's Motion to Stay (ECF No. 70) (J&J's Resp.) at 25; *see* Pl.'s Reply at 5 (acknowledging Plaintiff won this new contract).  This contract not only ensures that Plaintiff will receive revenue over the next five years, but it also demonstrates that Plaintiff can sign new service contracts going forward.

Accordingly, Plaintiff has not demonstrated sufficient irreparable harm to justify a stay or injunctive relief pending appeal.

**B.  The Government's Harm**

Unlike Plaintiff, the Government has alleged substantial harms incurred during Plaintiff's bid protest that would continue under a stay.  *See* Def.'s Aff.  Injunctive relief pending appeal is disfavored where it would force the Government to endure additional costs or financial and operational burdens, such as resorting to other, more expensive contracts than the contract award under protest.  *See, e.g.*, *NetCentrics Corp.*, 145 Fed. Cl. at 377 (denying an injunction which, if granted, would require the government to pursue six sole-source emergency contracts rather than the single contract award under protest); *Sigmatech, Inc. v. United States*, 136 Fed. Cl. 346, 354 (2018) (recognizing that an injunction would exacerbate harm to the government when the bid protest had already "delayed the [government's] ability to obtain lower-priced and better-value services" elsewhere); *Akima Intra-Data, LLC v. United States*, 120 Fed. Cl. 25, 29 (2015) (denying

an injunction that would require the government to "conduct another procurement and incur unwarranted costs").

The Government filed a declaration supporting that it has experienced similar harms. *See* Def.'s Aff. Since January 2021, the Government and Plaintiff have operated under non-competitive, single-source bridge contracts that were $100,000 to $120,000 more expensive per month than J&J's proposed pricing under the awarded contract. *Id.* ¶ 6. The bridge contracts' price premiums resulted in approximately $2.5 million in additional costs that the Government would not have incurred absent Plaintiff's protest, and which the Government anticipates will grow if the Court grants Plaintiff's Motion. *Id.* ¶¶ 6–7. In this manner, Plaintiff has financially benefitted from its bid protest for nearly two years at the expense of the Government. *See G4S Secure Integration*, 159 Fed. Cl. at 263–64 (considering whether an incumbent contractor has benefitted from the delay caused by its protest in balancing the harms experienced by each party). Additionally, any negotiation process for a third bridge contract would likely introduce added administrative and financial burdens, as the Government must request special approval for each sole-source contract and procure funding on a more frequent basis than under the contract awarded to J&J. Def.'s Aff., ¶ 9.

Furthermore, the Government has demonstrated that under the current bridge contract, Plaintiff is providing the Navy with a narrower scope of services than outlined in its Revised Solicitation and award to J&J. Def.'s Resp. at 9–10. The protested contract added several programs not previously included in the incumbent contract, which the Navy allegedly cannot accommodate under a bridge contract; these include an infrastructure condition assessment program, an inventory management program, and a new work order system for family housing projects. *Id.* Granting Plaintiff's Motion would force the Government to procure a third bridge

contract and delay implementation of these programs for an additional six to twelve months pending the appeal.  *Id.*  Plaintiff's Motion alleges that its harm far outweighs that experienced by either the Government or J&J because granting the "requested stay would merely maintain the status quo."  Mot. at 28; *see Swift & Staley*, 159 Fed. Cl. at 735 (granting a stay where the Government "expressed its willingness to maintain the *status quo* and has demonstrated that it is able to effectively continue operations . . . during the pendency of this litigation").  Yet the addition of these new programs to the Revised Solicitation signaled the Navy's desire to *deviate* from the status quo and add new services to NAVSTA Rota, which it cannot efficiently do under a stay or bridge contract.[9]  These constitute concrete, substantial harms, supported by evidence before this Court, that are likely to occur if this Court grants Plaintiff's Motion.

### C.   J&J's Harm

Plaintiff alleges that a stay would not inflict substantial harm on J&J because J&J has "performed no work at the Rota base" to date, and the stay would only delay J&J's performance until the Federal Circuit issues its decision.  Mot. at 29.  However, "delay in performing and

---

[9] Plaintiff argues that the "changes clause" incorporated in its bridge contract with the Navy would allow the Navy to alter the processes currently in place at NAVSTA Rota to implement newly desired programs.  Pl.'s Reply at 8–9.  Plaintiff does not cite to the specific provisions of the bridge contract to which it is referring, so it is difficult for this Court to assess the validity of this argument.  *See id.*  Nevertheless, the argument mischaracterizes the Government's position.  The Government does not allege that it cannot contractually implement these changes under a bridge contract.  Def.'s Resp. at 10.  Instead, the Government merely contends that "due to the significant effort involved in setting up these programs, the Navy cannot effectively add these programs to a short-term bridge contract."  *Id.*  In other words, it would be inefficient for the Government to initiate this process under a bridge contract of limited duration, particularly when the Government already selected an offeror whose proposal offered the Government better value and to whom the Government would later have to transition these processes.  The Government and the public have an interest in allowing the Government to "use the more efficient and less expensive contract while the matter is before the court of appeals."  *NetCentrics Corp.*, 145 Fed. Cl. at 378.  With respect to these new programs, the Government has demonstrated that its contract with J&J offers the "more efficient and less expensive" alternative.  Def.'s Aff., ¶¶ 5–6.

profiting from" an awarded contract "weighs against injunctive relief." *G4S Secure Integration*, 159 Fed. Cl. at 263 (citing *Telos*, 129 Fed. Cl. at 579 and *CRAssociates*, 103 Fed. Cl. at 28). Plaintiff's stance also ignores the considerable administrative burden that J&J has already endured in preparing to assume the NAVSTA Rota services contract. *See* J&J's Resp. at 37–40; Declaration of ████████████████, Director of International Operations for J&J (ECF No. 70-2) (J&J's Aff.). J&J has already hired key personnel for the NAVSTA Rota contract, ████ ████████████████████████████████████████████████████ J&J's Resp. at 37–40; J&J's Aff., ¶ 9; *see Akima Intra-Data*, 120 Fed. Cl. at 29 (recognizing harm where the awardee "has already begun hiring key personnel and incurred recruiting, compensation, training, and travel costs"). J&J ████████████████████████████████████ reasonably contends that these employees "will be caught in limbo" if this Court grants a stay, with no work to do in Spain ████████████████████. J&J's Resp. at 39; *see* J&J's Aff., ¶ 9. Not only would a stay place a heavy toll on J&J, but it also would likely create administrative difficulties for J&J, which would need to determine where to send its employees and how to pay them. J&J's Resp. at 39; *see* J&J's Aff., ¶ 9. J&J's demonstrated harm, therefore, weighs against issuing a stay pending appeal or injunctive relief.

## IV.   Granting Plaintiff's Motion Would Subvert the Public Interest

Contrary to Plaintiff's contentions, public interest counsels against granting Plaintiff's Motion. Plaintiff alleges that public interest favors injunctive relief in this instance, in part, due to Plaintiff's consistently favorable ratings as the incumbent contractor over the past 25 years. Mot. at 29. Plaintiff also suggests that public interest would disfavor the "wasted effort," which, it contends, would occur if Plaintiff ultimately won its appeal after the Government had transitioned to another contractor. *Id.* at 29–30. These arguments are unpersuasive, as they imply that J&J did

not represent the "best value" offeror or that the award to J&J was somehow unlawful or improper. This Court already held the Navy's contract award to J&J proper in its May 12, 2022 Memorandum and Order, and Plaintiff's Motion has failed to raise any new issues or questions on the merits that meaningfully challenge this Court's ruling. *See Newimar*, 160 Fed. Cl. at 121. The Navy concluded that J&J's proposal represented a better value than Plaintiff's proposal, and there is "a substantial public interest in allowing the government to proceed with contracts awarded . . . to the contractor offering the best value." *JWK Int'l Corp.*, 49 Fed. Cl. at 370.

Further, the FAR promotes the use of "full and open competition" in government procurements, which cannot occur if the Government continues granting Plaintiff sole-source, non-competitive bridge contracts. *See* FAR, Part 6; *JWK Int'l Corp.*, 49 Fed. Cl. at 370. As the Government is the opposing party in this matter, the Government's harms factor into the Court's assessment of public interest. *Nken*, 556 U.S. at 435 ("The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party."). Plaintiff's bridge contracts have already cost the Government an additional $2.5 million and cannot accommodate the new services the Navy sought in its Revised Solicitation and award to J&J. Def.'s Aff., ¶ 6. The public has an interest in permitting the Government to operate under the most efficient and cost-effective contract that satisfies its services needs during the appellate process. *See NetCentrics Corp.*, 145 Fed. Cl. at 378 ("[T]he public interest would be served by allowing the government to use the more efficient and less expensive contract while the matter is before the court of appeals."). Furthermore, Plaintiff is the only party that would benefit from a stay. *See JWK Int'l Corp.*, 49 Fed. Cl. at 370 (expressing concern when "the only party to benefit" from granting the requested injunctive relief and further delaying contract performance "would likely

be the incumbent contractor").  Ultimately, the public interest does not favor granting Plaintiff a stay or injunctive relief.

## <u>CONCLUSION</u>

For the reasons described above, Plaintiff's Motion fails to establish that a stay or injunctive relief pending appeal is warranted.  Accordingly, this Court **DENIES** Plaintiff's Motion for Stay of Judgment Pending Appeal (ECF No. 67).

The parties are directed to **CONFER** and **FILE** a Notice within three days of this Memorandum and Order, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.


IT IS SO ORDERED.




*Eleni M. Roumel*
ELENI M. ROUMEL
Judge


Dated: November 14, 2022
Washington, D.C.